## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

LEROY R. WHITTENBERGER,

      Plaintiff,

                              Case No. 23-CV-1589-BHL

v.

JARED HOY,SECRETARY,                        JURY TRIAL DEMANDED
WISCONSIN DEPARTMENT
OF CORRECTIONS; MELISSA ROBERTS,
ASSISTANT DEPUTY SECRETARY; DAN
CROMWELL, WARDEN, NEW LISBON
CORRECTIONAL FACILITY,
DR. DANIEL LAVOIE, KOREEN FRISK,
MELISSA MCFARLANE, TAMMY STURMNESS,
ROSLYN HUNEKE, LISA PAYNE, NICOLE
BROWN, HADASSA LEGRAND, and
DR. BARRY DAUGHTRY, in their individual
and official capacities.

      Defendants.

## FIRST AMENDED COMPLAINT

      NOW COMES, Plaintiff, MR. LEROY R. WHITTENBERGER, by and through his undersigned attorney, Lonnie D. Story, Esquire of the STORY LAW FIRM, LLC, and for their claims against the defendants, allege and state as follows:

### **INTRODUCTION**

      1. This is a civil rights action in which Plaintiff, LEROY R. WHITTENBERGER, seek relief and all damages that flow from Defendants' multiple violations of his rights, privileges, and immunities as secured by the Eighth Amendment of the United States Constitution pursuant to 42 U.S.C. §1983.

1

2. At all times relevant to this litigation, Mr. Whittenberger was an inmate at the New Lisbon Correctional Institution (NLCI) under the care and supervision of the Wisconsin Department of Corrections (WIDOC).

3. At all times relevant, Defendants owed Mr. Whittenberger a duty of care to provide adequate medical care.

4. At all times relevant, Defendants willfully and deliberately ignored their duties, specifically their duties to ensure Mr. Whittenberger received adequate medical treatment for his medical issues while in the care and supervision of Defendants.

5. Defendants' willful and deliberate indifference to Mr. Whittenberger violated his Constitutional Rights to be free from Cruel and Unusual Punishment.

6. Defendants' actions constituted a deliberate indifference from correctional institution supervisors and staff and medical staff at NLCI.

7. Mr. Whittenberger seeks all relief appropriate and allowable resulting from his constitutional violations Defendants inflicted upon him.

8. As part of the aforementioned relief, Mr. Whittenberger seeks damages, including any and all damages recoverable under all applicable state laws, 42 U.S.C. Sections 1983 and 1988, attorney fees and costs, and any further relief deemed proper by this Honorable Court.

## JURISDICTION AND VENUE

9. The jurisdiction of the court is invoked pursuant to the Civil Rights Act of 1871, 42 U.S.C. §1983; Judicial Code, 28 U.S.C. §1331, §1346, and §1391(b); the United States; and this Court's supplementary jurisdiction powers pursuant to 28 U.S.C. §1367.

10.  Venue is proper in this District under 28 U.S.C.§1391.  The parties reside, or at the time all events took place, resided in this judicial district, and the events giving rise to Plaintiff's claims also occurred in this judicial district.

## PARTIES

11.  Plaintiff Leroy R. Whittenberger is an inmate at NLCI in New Lisbon, Wisconsin.

12.  ]Wisconsin Department of Corrections ("WIDOC") is an entity run by the State of Wisconsin.  The Department states it, "works to protect the public through the constructive management of those placed in its charge.  We offer education, programming, and treatment to persons in our care that enables them to be successful upon returning to the community.  Our mission is to achieve excellence in correctional practices while fostering safety for victims and communities."[1]

13. Defendant Jared Hoy is the Secretary of WIDOC.  Defendant Hoy is responsible for the management of WIDOC.

14.  Defendant Melissa Roberts is the Deputy Secretary of WDOC and is second in charge of the Department.

15.  Defendant Dan Cromwell is the Warden at NLCI.  As warden at NLCI, Defendant Cromwell is responsible for all staff and inmates at NLCI.  Defendant Cromwell is responsible for the supervision and training of staff under his management.  Defendant Cromwell is also responsible for ensuring the health, safety, and well-being of all inmates at NLCI.

16.  Defendant Dr. Daniel Lavoie is a Medical Director for Defendant WIDOC.  Dr. Lavoie denied Mr. Whittenberger an X-ray and physical therapy when Mr. Whittenberger complained of knee pain to him.

---

[1] https://doc.wi.gov/Pages/Home.aspx

3

17. Defendant Koreen Frisk was involved in the medical treatment of Mr. Whittenberger in her role as a Nurse at NLCI. Defendant Frisk also misrepresented the status of Mr. Whittenberger's MRI appointment.

18. Defendant Melissa McFarlane was involved in the medical treatment of Mr. Whittenberger in her role as a Nurse at NLCI. Defendant McFarlane also misrepresented the status of Mr. Whittenberger's MRI appointment.

19. Defendant Tammy Sturmness was the Health Services Unit (HSU) Manager at NLCI and was involved in the medical treatment and, based on information and belief, the medical appointment scheduling of Mr. Whittenberger.

20. Defendant Roslyn Huneke is a Nursing Supervisor. Based on information and belief, Defendant Huneke was involved in the medical treatment, either directly or through the supervision of other nurses, of Mr. Whittenberger.

21. Defendant Lisa Payne was involved in the medical treatment of Mr. Whittenberger in her role as a nurse at NLCI. Defendant Payne was informed of Mr. Whittenberger's knee pain on numerous occasions.

22. Defendant Nicole Brown was another HSU Manager at NLCI and was involved in the medical treatment decisions and, based on information and belief, the medial appointment scheduling of Mr. Whittenberger.

23. Defendant Hadassa Legrand is an Advanced Practice Nurse Prescriber (APNP) and was provided medical treatment to, and made medical decisions for, Mr. Whittenberger.

24. Defendant Dr. Barry Daughtry was involved in the medical treatment of Mr. Whittenberger in his role as a medical doctor at NLCI.

## FACTUAL ALLEGATIONS

25.  WIDOC is an entity run by the State of Wisconsin.  The Department states it, "works to protect the public through the constructive management of those placed in its charge.  We offer education, programming, and treatment to persons in our care that enables them to be successful upon returning to the community.  Our mission is to achieve excellence in correctional practices while fostering safety for victims and communities."[2]

26. At all times relevant, WIDOC , or employees under their employ, were responsible for providing Mr. Whittenberger with medical care.

27.  According to WIDOC's website, Defendants "believe that every inmate in DOC custody should have access to quality medical and mental health services.  As healthcare providers, our responsibility is to provide care to inmates in DOC custody."[3]

28.  The website goes on to state, "We deliver high quality care within correctional facilities throughout Wisconsin." [4]

29.  Additionally, according to the website, WIDOC believes, "every individual person has *intrinsic value and the right to health care.*" (Emphasis added) [5]

30.  The role of nurses according to the same website is, "the care, restoration of health, and treatment of patients." [6]

---

[2] *Id.*
[3] https://doc.wi.gov/Pages/Careers/HealthcareCareers.aspx

[4] *Id.*
[5] *Id.*
[6] *Id.*

31. According to an NLCI Inmate Handbook dated September 2015, "NLCI is committed to the safety, security and protection of the public, staff, and inmates in a humane and constructive manner." [7]

32. The role of nurses according to the same website is, "the care, restoration of health, and treatment of patients." [8]

33. Mr. Whittenberger arrived to NLCI on or about December 14, 2020.

34. From that date forward, the responsibility of ensuring Mr. Whittenberger had access to adequate medical care and treatment would have fallen on Defendants.

35. On or about May 7, 2021, while incarcerated at NLCI, Mr. Whittenberger injured his right knee.

36. Approximately four days later, Mr. Whittenberger wrote a Health Service Request indicating he had "severe knee pain."

37. The next day, RN Roy Burkhalter asked Defendant Dr. Lavoie if an x-ray and physical therapy (PT) consult would be suggested.

38. During this visit RN Burkhalter informed Mr. Whittenberger he would need an X-ray and likely an MRI.

39. Approximately five (5) days later, Defendant Lavoie directed Mr. Whittenberger to follow-up with Nursing in four (4) weeks if his issue was not resolved.

40. On May 16, 2021, Mr. Whittenberger filed another Health Service Request stating, "The pain in my knee is getting worse. I have not received ibuprofen yet. I'm going to need a bottom bunk. I can walk upstairs to the second floor but not to climb into the top bunk."

41. The next day Mr. Whittenberger received a response from Defendant McFarlane.

---

[7] https://doc.wi.gov/Documents/OffenderInformation/AdultInstitutions/NLCIInmateHandbook.pdf
[8] *Id.*

6

42. The response informed Mr. Whittenberger that he was prescribed Naproxen and would be unable to also take ibuprofen.

43. The response also informed Mr. Whittenberger he could be "assessed" for a lower bunk and that a copay would apply.

44. Mr. Whittenberger proceeded to pay the $7.50 copay.

45. On May 19, 2023, Mr. Whittenberger wrote another Health Service Request.

46. Mr. Whittenberger discussed his knee being examined on or about May 12, 2024. He then discussed being given a bottom bunk and again informed staff his knee was not improving.

47. The next day Mr. Whittenberger was informed his X-ray request had been denied and was again reminded to follow-up in four (4) weeks.

48. Due to his continued pain, Mr. Whittenberger filed another Health Service Request on or about May 27, 2021.

49. Mr. Whittenberger wrote, "I'm still in pain. My knee is not getting better. I can't wait 4 weeks. I need to see a doctor."

50. The next day Defendant Frisk responded to Mr. Whittenberger.

51. In the response, Mr. Whittenberger was informed to continue ice, Tylenol, and Naproxen. He was also directed to continue using an Ace wrap and to see if the problem resolved in four (4) weeks.

52. After enduring pain for four weeks, Mr. Whittenberger wrote another Health Service Request on June 14, 2021.

53. Mr. Whittenberger wrote, "It's been 4 weeks - my knee is not any better - I need to see a doctor.

7

54. The next day Mr. Whittenberger was provided treatment by RN Debra Werner.

55. RN Werner informed Mr. Whittenberger he should have had an X-ray already and was given a lower bunk.

56. On or about June 15, 2021, RN Werner emailed Defendant Lavoie requesting an X-ray or therapy.

57. Defendant Lavoie responded by indicating Mr. Whittenberger should receive a physical therapy evaluation and treatment.

58. On or about June 23, 2021, Mr. Whittenberger filled out another Health Service Request.

59. In his request, Mr. Whittenberger wrote, "Last Tuesday I was seen by a nurse - what is going to be done with my knee?"

60. The next day RN Lynn Dobbert informed Mr. Whittenberger they were "still waiting" for the doctor to respond.

61. Mr. Whittenberger was forced to write yet another Health Service Request on or about July 1, 2024.

62. In this request, Mr. Whittenberger wrote, "It's been 57 days since I hurt my knee. It's not any better.  Something has to be done."

63. On July 7, 2021, Mr. Whittenberger was seen by Defendant Payne.  In this visit, Defendant Payne informed Mr. Whittenberger physical therapy, but not an X-ray, was ordered.

64. On the same day Mr. Whittenberger received a letter from Defendant Payne.

65. In the letter, Defendant Payne wrote, "As we discussed you have been referred to be seen by our on-site provider.  I've included information on knees for you in the meantime, they

8

have some helpful suggestions and reinforce what we have been talking about. Please let us know if you have any new or worsening symptoms."

66. On or about August 19, 2021, Mr. Whittenberger was seen by RN Carol Uniewski for a T.B. screening.

67. During this visit Mr. Whittenberger discussed his knee condition.

68. After Mr. Whittenberger informed RN Uniewski about Defendant Payne's letter, RN Uniewski checked Mr. Whittenberger's appointments.

69. There were no appointments schedule from August to October of 2021.

70. This is in direct conflict with what Mr. Whittenberger had received from Defendant Payne.

71. Defendant Payne's actions were in stark contrast to her responsibilities as a medical provider and unnecessarily prolonged Mr. Whittenberger's pain and suffering.

72. RN Uniewski then informed Mr. Whittenberger she would make sure he saw a doctor the next day.

73. The next day, with the assistance of RN Uniewski, Mr. Whittenberger saw Defendant (Dr.) Daughtry.

74. Defendant (Dr.) Daughtry ordered an X-Ray on August 20, 2021.

75. This X-Ray was ordered approximately three months *after* Mr. Whittenberger initially injured his knee.

76. Four (4) days later, Mr. Whittenberger had an X-ray.

77. The X-ray showed a fracture of the tibia plateau. [9]

---

[9] The X-ray report was read by Nicolaus Kuehn, M.D.

9

78.  On or about October 1, 2021, Mr. Whittenberger saw Defendant (Dr.) Daughtry who ordered an MRI.

79.  In his assessment of Mr. Whittenberger, Defendant (Dr.) Daughtry described the "uncertain" fracture in Mr. Whittenberger's knee.

80.  The plan section went on to say Mr. Whittenberger would be scheduled for an MRI and he was to be referred to Orthopedic Surgery.

81.  On or about November 4, 2021, Mr. Whittenberger filled out a Health Service Request inquiring on the status of his MRI.

82.  Defendant McFarlane informed Mr. Whittenberger his MRI was "coming up soon".

83.  On or about December 17, 2021, Dr. Ellen O'Brien ordered another X-ray and a bone density scan.

84.  The new X-ray did not show any signs of a fracture.

85.  On or about February 13, 2022, Mr. Whittenberger inquired with Defendants on the status of the above-mentioned ordered MRI.

86.  The next day Defendant McFarlane informed Mr. Whittenberger is bone scan had been scheduled.

87.  On or about February 14, 2022, Mr. Whittenberger had inquired with HSU on the status of his bone scan.

88.  Based on information and belief, Mr. Whittenberger never received a response to this request.

89.  On or about February 20, 2022, Mr. Whittenberger wrote another Health Service Request.

90.  In this request he inquired when he would be receiving his MRI and bone scan.

10

91. The next day Defendant McFarlane informed Mr. Whittenberger they MRI and bone scan were ordered.

92. Mr. Whittenberger was also informed the MRI and bone scan were ordered by Defendant Frisk.

93. On or about February 23, 2022, Mr. Whittenberger had his bone scan conducted.

94. Mr. Whittenberger saw Defendant (Dr.) Daughtry on or about March 4, 2022.

95. Defendant (Dr.) Daughtry then wrote a non-party to the case, Mindy Hams, to *ask* if Mr. Whittenberger's MRI was scheduled.

96. Ms. Hams replied that the MRI had already taken place which it had not.

97. On or about March 6, 2022, Mr. Whittenberger wrote Defendant (Dr.) Daughtry regarding the status of his MRI.

98. The next day Defendant Frisk informed Mr. Whittenberger the MRI was scheduled.

99. On March 7, 2022, Mr. Whittenberger requested to see Defendant (Dr.) Daughtry.

100. Mr. Whittenberger was informed he was scheduled to see the doctor soon.

101. The next day Mr. Whittenberger specifically asked to see Defendant (Dr.) Daughtry because Mr. Whittenberger knew Defendant (Dr.) Daughtry was leaving NLCI.

102. Mr. Whittenberger specifically asked to see Defendant (Dr.) Daughtry.

103. Despite being told he would see Defendant (Dr.) Daughtry "soon", Mr. Whittenberger never saw Defendant (Dr.) Daughtry again.

104. On or about March 25, 2022, Mr. Whittenberger finally had his MRI.

105. On or about April 4, 2022, almost one full year after injuring his knee, Mr. Whittenberger was forced to write yet another Health Service Request.

106.  In this request, Mr. Whittenberger wrote, "It's been almost a year since my knee got hurt.  It took 332 days to get a knee brace, 323 days for a[n] MRI and 109 days for an X-ray.  I'm in constant pain, when is something going to be done to help?"

107.  Defendant McFarlane responded to Mr. Whittenberger the next day.

108.  In the response Defendant McFarlane wrote, "Splint issued 4-4-22 by PT.  You are scheduled to see offsite Orthopedics."

109.  On or about April 19, 2022, after consulting with Eric Nelson, M.D., Mr. Whittenberger elected to have a cortisone injection at the Waupun Orthopedic Clinic.

110.  On or about April 30, 2022, Mr. Whittenberger wrote yet another Health Service Request.

111.  In this request, Mr. Whittenberger wrote, "Dr. Daughtry ordered a[n] MRI Oct 1, 2021, I didn't get it till March 25, 2022.  Why was I denied needed medical care for 6 months?"

112.  In a dismissive response, Defendant Frisk wrote, "Knee MRI was ordered 2-18-22 and done 3-25-22.  You also saw Dr. O'Brien, had labs and PT," or words to that effect.

113.  This response directly contradicts Mr. Whittenberger's with Defendant (Dr.) Daughtry on October 1, 2021.

114.  In that visit, Mr. Whittenberger was told Defendant (Dr.) Daughtry had ordered an MRI.

115.  On or about May 9, 2022, Mr. Whittenberger had to write to inquire on the status of his cortisone injection appointment.

116.  Defendant McFarlane replied to Mr. Whittenberger the next day with "ordered".

117.  Approximately one month later, Mr. Whittenberger was called to HSU.

118. During his visit with provider Mindy Hams, Mr. Whittenberger was asked if he had his cortisone injection yet.

119. Mr. Whittenberger responded he had not.

120. Defendant medical providers had informed Mr. Whittenberger he would have the injection, reported to have scheduled the injection, and then had to ask Mr. Whittenberger if it happened.

121. This issue highlights the willful disregard for Mr. Whittenberger's health and well-being and the deliberate indifference to the pain he experienced.

122. On or about September 12, 2022, Mr. Whittenberger finally received his cortisone injection.

123. Approximately three days later, Mr. Whittenberger requested to see Dr. O'Brien "the next time she is here."

124. Mr. Whittenberger was informed he was on the list.

125. On or about November 21, 2022, Mr. Whittenberger wrote another Health Service Request asking why he was never told his tibia plateau was fractured.

126. In a response, RN Martin informed Mr. Whittenberger the X-ray showed degenerative changes and there were no acute findings.

127. The next day, Mr. Whittenberger asked when he was going to be able to see Dr. O'Brien again via yet another Health Service Request.

128. Defendant McFarlane informed Mr. Whittenberger he was scheduled to See Dr. O'Brien in December.

129. On December 2, 2022, Mr. Whittenberger filed another Health Service Request to inform Defendants he wished to move forward with right knee surgery since his cortisone shot did not work.

130. The Health Service Request in Mr. Whittenberger's possession did not give a response to Mr. Whittenberger's inquiry.

131. On or about December 28, 2022, Mr. Whittenberger again wrote a Health Service Request asking when he was going to see Dr. O'Brien.

132. The next day, an unidentified medical provider informed Mr. Whittenberger he was "on the list."

133. Approximately two months later, in February of 2023, still with no appointment with Dr. O'Brien, Mr. Whittenberger wrote yet another Health Service Request.

134. In his request, Mr. Whittenberger wrote, "I have asked several times about seeing Dr. O'Brien. Several times I have been told 'I'm on the list.' Can you please tell me when I was put on the list and when I will be seen. I continue to have knee pain daily, and again the cortisone shot did not work and I wish to move forward with surgery."

135. In the response from an unidentified medical provider, Mr. Whittenberger is then informed he is a patient of Dr. Nelson, not Dr. O'Brien.

136. Defendants forced Mr. Whittenberger to wait for several months with no regard for his physical or mental health in yet another blatant example of deliberate indifference.

137. On or about March 7, 2023, Mr. Whittenberger filled out another Health Service Request where he attempted to request Manager involvement.

138. His request stated, "18 days ago I was seen by RN Frisk. She said she would contact Dr. LaVoie and Dr. Nelson about my knee and get back to me. That was 18 days ago. What is going on?"

139. An unidentified provider replied to Mr. Whittenberger by saying, "A message has been sent to LaVoie, MD. Awaiting response."

140. On or about March 20, 2023, Mr. Whittenberger wrote a Health Service Request to again address his concerns about the lack of medical treatment for his knee.

141. RN Valerius responded to Mr. Whittenberger by saying, "Message sent on 2-17-23. Awaiting response from provider. You have an orthopedics follow-up ordered for your shoulder." RN Valerius went on to suggest Mr. Whittenberger bring up his knee during that appointment.

142. This unwillingness to assist Mr. Whittenberger in obtaining proper medical treatment further highlights Defendants' deliberate indifference to Mr. Whittenberger.

143. On or about March 22, 2023, Mr. Whittenberger filed another Health Service Request regarding his knee condition.

144. In this request, Mr. Whittenberger wrote, "Read my last few HSR's. If a doctor (LaVoie) doesn't respond to your message about my knee for over a month shouldn't someone call him? I have lived with pain for almost 2 years from my knee. When is something going to be done?"

145. Mr. Whittenberger was informed the next day a phone call would be made.

146. On or about April 11, 2023, Mr. Whittenberger met with Dr. Nelson.

147. In the notes for this visit, Dr. Nelson wrote, "We know this inmate. We have been dealing with his degenerative right knee *for quite some time*. I injected him back in September of 2022." (Emphasis added.)

148. Mr. Whittenberger informed Dr. Nelson his cortisone injection did not work and he wished to move in the direction of joint replacement.

149. Dr. Nelson's impression was listed as "Right knee degenerative joint disease."

150. Dr. Nelson indicated a need for "fresh radiographs" prior to finalizing the surgical plan.

151. Dr. Nelson wrote, "Our previous imaging studies, which are now quite dated, *did demonstrate his degenerative change* to be localized to the medial compartment." (Emphasis added.)

152. On or about May 10, 2023, Mr. Whittenberger was forced to write another Health Service Request.

153. In this request, Mr. Whittenberger wrote, "I had new X-rays done almost a month ago and I was supposed to have a consultation with Dr. Nelson. When is it going to be and will it be in person or televisit?"

154. An unidentified provider responded, "You have an ortho appointment scheduled in the next 2 weeks."

155. On or about May 31, 2023, Mr. Whittenberger wrote another Health Service Request.

156. In his request, Mr. Whittenberger wrote, "On 5-10-23 I received a HSR back that said and I quote, 'You have an Ortho appointment scheduled in the next 2 weeks.' Last time I checked 2 weeks is 14 days. It is now 22 days. What excuse are you going to use this time?"

16

157. In an undated response, an unidentified provider stated, "I see a order for a future appointment with orthopedics [with] no specific date."

158. This meaningless response further shows Defendants' deliberate indifference to Mr. Whittenberger's medical needs.

159. On or about September 12, 2022, Mr. Whittenberger had another visit with Dr. Nelson.

160. In this visit, Mr. Whittenberger had a Kenalog/plain lidocaine injection into the medial compartment of the right knee.

161. On or about January 3, 2024, Mr. Whittenberger requested information via a Health Service Request form.

162. Specifically, Mr. Whittenberger asked, "Who is the regional nursing coordinator? [a]nd address."

163. RN Valerius responded to Mr. Whittenberger by saying, "Holly Gunderson is this region's nursing coordinator. You may write to her here as she is on site frequently."

164. On or about January 24, 2024, Mr. Whittenberger had a right knee medial unicondylar arthroplasty due to osteoarthritis.

165. This procedure took place at SSM Health - Waupun Memorial Hospital in Waupun, Wisconsin.

166. Approximately two (2) days later, Mr. Whittenberger returned to NLCI.

167. On January 26, 2024, Mr. Whittenberger filled out a Health Service Request form requesting pain medication.

168. In his request, Mr. Whittenberger stated, "I just got back from knee surgery (replacement). I was given pain meds from Waupun Memorial Hospital. They won't give them to me. My pain level is 10 out of 10. I need the pills! I can't stand the pain!"

169. A response was given to Mr. Whittenberger the next day.

170. In the response, Defendant Frisk informed Mr. Whittenberger he needed to go to the HSU for his medicine.

171. She went on to state he took his "pm meds" on January 26, 2024.

172. Defendant Frisk also stated, Mr. Whittenberger did not go to the HSU at "bed".

173. Defendant Frisk, despite knowing Mr. Whittenberger was to take medication at a defined time, seemingly put the responsibility solely on Mr. Whittenberger to retrieve his medication.

174. Defendant Frisk's approach to Mr. Whittenberger's question also shows a deliberate indifference as it is her responsibility to assist in Mr. Whittenberger's medical care and recovery.

175. On January 27, 2024, Mr. Whittenberger requested a stool softener via a Health Service Request Form.

176. In the form Mr. Whittenberger stated, "I was never given a stool softener and when I went to the bathroom after 3 days and bled a lot, it stopped. I need the stool softener and Miralax."

177. These medications should have been provided to Mr. Whittenberger as prescribed by Dr. Nelson.

178. Only after Mr. Whittenberger specifically requested the medication was it provided to him.

179. Mr. Whittenberger also filled out a different Health Service Request form on January 27, 2024.

180. In that request, Mr. Whittenberger asked, "I asked C.O. Donaldson who issued me Tramadol but she would not tell me. Who issued it?"

181. In a response dated January 28, 2024, Defendants informed Mr. Whittenberger his Tramadol was ordered by Defendant Legrand.

182. Mr. Whittenberger was supposed to receive medications provided by Dr. Nelson, a physician at Waupun Memorial Hospital.

183. Defendants' failure to provide Mr. Whittenberger with his prescribed medication is yet another example of their deliberate indifference to the health and recovery of Mr. Whittenberger.

184. On January 29, 2024, Mr. Whittenberger requested an ice container with lid to ice his knee post-surgery.

185. Mr. Whittenberger requested this type of ice container because "plastic bags do not work well."

186. Additionally, Mr. Whittenberger requested two bags.

187. Mr. Whittenberger's request was denied two days later by staff since they did not have those ice containers.

188. The denial went on to say that patients "get a Ziploc ice bag to put ice in and can only be issued one, not two."

189. No further information was provided on the denial.

190. On January 30, 2024, Mr. Whittenberger filed a Health Service Request specifically seeking the pain killer ordered by Dr. Nelson at Waupun Memorial Hospital.

19

191. The request stated, "I gave Tramadol a chance.  It did not work at all.  My surgeon Dr. Nelson ordered a pain killer at Waupun Memorial that helped *and ordered it here*.  You are tortureing [*sic*] me by not giving me the ordered pain killer."

192. The request was forwarded to the HSU Manager the next day.

193. Based on information and belief, no further information was provided to Mr. Whittenberger regarding his request.

194. On February 1, 2024, Mr. Whittenberger filled out another Health Service Request seeking additional Acetaminophen.

195. In his request, Mr. Whittenberger stated, "I requested more Acetaminophin [*sic*] and was denied for 2 weeks.  You deny me the pain killer by doctor ordered, give me Tamadol [*sic*] which did nothing - now you deny me [a]cetaminophen.  This is truely [*sic*] sadistic!  I am in horrible pain!"

196. The request was denied.

197. In the denial it stated, "Naproxen and Acetaminophen too early to issue. Max of 50/month.  If more are needed, they can be purchased from canteen."

198. This is a clear denial of medication prescribed by Dr. Nelson to Mr. Whittenberger.

199. This denial constitutes a clear and deliberate indifference to the health of Mr. Whittenberger.

200. Based on information and belief, and according to medical records, Mr. Whittenberger should have received post-operative medications.

201. Mr. Whittenberger's discharge papers indicated Celebrex, Tylenol, and an ability to substitute Norco for Tylenol twice daily.

## CLAIMS

### COUNT I - MONELL LIABILITY - DEFENDANTS

202. Plaintiff incorporates the foregoing paragraphs as if set forth fully herein.

203. All Defendants acted under color of state law, while operating in their respective capacities, during their interactions with Mr. Whittenberger.

204. Upon information and belief, between on or about December 14, 2020, and present, Defendants, with deliberate indifference to the rights of Mr. Whittenberger, maintained and permitted a custom, pattern, and/or practice - by and through its agents and employees acting under color of law - ignoring the health concerns and needs of Mr. Whittenberger.

205. NLCI knew of systemic deficiencies, the pain Plaintiff was experiencing, and the substantial risks posed to inmates in a same or similar sit to Mr. Whittenberger but failed to take reasonable steps to alleviate those deficiencies and risks.

206. For example, NLCI staff had to ask Mr. Whittenberger if he had received medical procedures.

207. Additionally, Mr. Whittenberger was subjected to unnecessarily long wait times to see a medical provider while Defendants were keenly aware of Mr. Whittenberger's knee problem.

208. Contrary to Defendants' constitutional responsibilities, policy, custom and practice was to refuse to refer inmates to outside medical care and delay necessary treatment to inmates due to a lackadaisical attitude and approach, disinterest, deliberate indifference, understaffing, incompetence and poor training and/or complete lack of training.

209. Upon information and belief, Defendants had implemented numerous policies, customs, and practices at NLCI which resulted in needless, unwarranted, and preventable suffering, denial of medical care.

210. As a direct and proximate result of such customs, patterns, and/or practices, and the actions of Defendants in their individual and official capacities, Mr. Whittenberger sustained injuries and damages as alleged herein.

## COUNT II - VIOLATION OF THE EIGHTH AMENDMENT

211. Plaintiff realleges the above paragraphs and incorporates same as if more fully set forth herein.

212. The Eighth Amendment's cruel and unusual punishment clause "imposes a duty on prison officials to provide humane conditions of confinement, including adequate food, clothing, shelter, sanitation, medical care, and reasonable safety from serious bodily harm." *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008).

213. The Eighth Amendment also protects "prisoners from prison conditions that cause 'the wanton and unnecessary infliction of pain.'" *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014).

214. "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,'…prescribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 1204 (1976).

215. To establish an entitlement to damages for deliberate indifference to a serious medical need, an inmate must show evidence that an objectively serious medical condition was presented that a defendant responded to with deliberate indifference, thus resulting in some injury. *Lord v. Beahm*, 952 F.3d 902, 904 (7th Cir. 2020).

216. At all times relevant, Mr. Whittenberger was entitled to all rights, privileges and immunities afforded to all incarcerated citizens of the State of Wisconsin and the United States.

217. At all times relevant, Defendants were acting within the course and scope of their employment with the Wisconsin Department of Corrections and were acting under color of state law with the authority granted to them as corrections officers, supervisors, shift supervisors, health care providers, wardens, and/or administrators, along with any other roles or responsibilities not mentioned under the supervision of any named Defendant.

218. Pursuant to the Eighth Amendment of the United States Constitution, Mr. Whittenberger had a right to be free from cruel and unusual punishment while incarcerated at NLCI and, at all times relevant, while under the custody and control of the Wisconsin Department of Corrections.

219. At all times relevant, Mr. Whittenberger had a right to adequate and sufficient medical treatment.

220. At all times relevant, Defendants, with malice, recklessness, and/or deliberate indifference, kept Mr. Whittenberger from obtaining adequate medical care that was reasonably available.

221. Defendants denied Mr. Whittenberger the ability to obtain adequate medical treatment and denied him reasonable, routine access to medical treatment with unnecessary and prolonged wait times.

222. Defendants' deliberate indifference to Mr. Whittenberger's medical needs were in furtherance of, and consistent with: (a) policies, customs, and practices which WDOC and NLCI promulgated, created, implemented, or possessed responsibility for the continued operation of; and (b) policies, customs, and practices which WDOC and NLCI had responsibility for implementing and which other named Defendants assisted in developing or executing.

223. In the alternative, Defendants' deliberate indifference to Mr. Whittenberger's medical needs are inexcusable and do not conform with the required duty of care owed to Mr. Whittenberger.

223. Through the above-mentioned actions and/or omissions, Defendants deprived Mr. Whittenberger of the rights secured by the Eighth Amendment of the United States Constitution.

WHEREFORE, in the interest of justice and the absence of any prejudice to Defendants, Plaintff respectfully request that this Honorable Court grant Plaintiff's Motion for Leave to File their Amended Complaint.

RESPECTFULLY SUBMITTED,

Dated: August 27, 2024                    Electronically signed by:


*Lonnie D. Story*
Lonnie D. Story, Esquire
Attorney for Plaintiffs
STORY LAW FIRM, LLC
Wis. Bar #1121459
732 N. Halifax Avenue, #301
Daytona Beach, Florida 32118
(386) 492-5540
lstorylaw@gmail.com